**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION**

_____
                                                    :
JASON HINSON,                          :
                                                    :
            Plaintiff,                        :         Civil Action No. 5:17-CV-0260
                                                    :
      v.                                        :
                                                    :
KYLE MARTIN,                            :
                                                    :
            Defendant.                     :
_____:

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S _DAUBERT_ MOTION**

## TABLE OF CONTENTS

Page

I.   PRELIMINARY STATEMENT ..................................................................... 1

II.   FACTUAL BACKGROUND ......................................................................... 1

III.   LEGAL STANDARD ................................................................................... 4

IV.   ARGUMENT ................................................................................................. 5

    A.   Mr. Burwell's Opinion Regarding a Canine Warning is Admissible and Relevant. ................................................................................................... 6

    B.   Mr. Burwell Will Not Provide Legal Conclusions, But Opinions on the "Necessity" of Defendant's Actions are Permissible. ................................ 8

    C.   Mr. Burwell's Opinions Regarding the Defendant's Violations of DPSO Policies are Admissible and Relevant. ................................................... 10

    D.   Mr. Burwell's Description of Plaintiff's Injury is His Factual Basis for His Opinion, and is Admissible. .................................................................... 12

    E.   Mr. Burwell's Opinions on Defendant's Behavior After Apprehension is Admissible and Relevant. ...................................................................... 13

    F.   Mr. Burwell's Opinions on Defendant's Inadequate Reports are Relevant. ......... 14

    G.   Dr. Best's Opinions About Plaintiff's Likely Future Medical Needs are Admissible and Relevant. ...................................................................... 15

    H.   Opinions by Plaintiff's Former Treating Medical Providers are Admissible to the Extent They are Based on Those Providers' Treatment of Plaintiff and Knowledge of Plaintiff's Injuries. ................................................... 16

V.   CONCLUSION ........................................................................................... 17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abdullahi v. City of Madison*,
    423 F.3d 763 (7th Cir. 2005) ...............................................................11

*Becker v. City of Evansville*,
    No. 3:12-cv-00182-TWP-MPB, 2016 WL 6395868 (S.D. Ind. Oct. 28, 2016) .....................11

*Bocanegra v. Vicmar Servs., Inc.*,
    320 F.3d 581 (5th Cir. 2003) ................................................................5

*Brown v. Ill. Cent. R.R. Co.*,
    705 F.3d 531 (5th Cir. 2013) ................................................................4

*Cobb v. Jones*,
    No. 14–0745, 2015 WL 5794027 (W.D. La. Oct. 2, 2015) ..................................8

*Cooper v. Brown*,
    844 F.3d 517 (5th Cir. 2016) ................................................................9

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993).................................................................1, 4, 10

*Guy v. Crown Equip. Corp.*,
    394 F.3d 320 (5th Cir. 2004) ................................................................4

*Hacker v. Cain*,
    No. 3:14-00063-JWD-EWD, 2016 WL 3681443 (M.D. La. July 6, 2016) .................12, 13

*Hinson v. Martin*,
    853 F. App'x 926 (5th Cir. 2021) .........................................................1, 6

*Joseph v. Doe*,
    No. 17-5051, 2021 WL 2313475 (E.D. La. June 7, 2021)............................9, 10, 11

*Kelly v. Stassi*,
    587 F. Supp. 3d 409 (M.D. La. Feb. 25, 2022)............................................7, 8, 12

*Kumho Tire Co., Ltd. v. Carmichael*,
    526 U.S. 137 (1999).........................................................................4

*Kyle v. City of New Orleans*,
    353 So.2d 969 (La. 1977) ...................................................................8

*Moore v. LaSalle Corr., Inc.*,
    No. 3:16-CV-01007, 2020 WL 6389183 (W.D. La. Oct. 30, 2020) ............................ 8, 11, 12

*Munoz v. Orr*,
    200 F.3d 291 (5th Cir. 2000) ................................................................................................. 4

*Pipitone v. Biomatrix, Inc.*,
    288 F.3d 239 (5th Cir. 2002) ................................................................................................. 4

*Rivera v. Ring*,
    810 F. App'x 859 (11th Cir. 2020) ...................................................................................... 10

*Schurman v. Panola-Harrison Elec. Coop., Inc.*,
    No. 03-1467, 2006 WL 8456468 (W.D. La. June 6, 2006) ................................................. 12

*Tajonera v. Black Elk Energy Offshore Operations, LLC*,
    No. 13-0366, 2016 WL 1178669 (E.D. La. Mar. 28, 2016) .................................................. 4

*Talbot v. Elec. Ins. Co.*,
    No. 17-299-SDD-EWD, 2018 WL 6274359 (M.D. La. Nov. 30, 2018) .......................... 15, 16

*United States v. Caldwell*,
    586 F.3d 338 (5th Cir. 2009) ............................................................................................... 15

*United States v. Mohr*,
    318 F.3d 613 (4th Cir. 2003) ................................................................................................. 9

*Vance v. Deloach*,
    No. 3:19-CV-999-BJD-MCR, 2022 WL 1555589 (M.D. Fla. Apr. 14, 2022) ...................... 12

*Vogler v. Blackmore*,
    352 F.3d 150 (5th Cir. 2003) ................................................................................................. 5

*Watkins v. Telsmith, Inc.*,
    121 F.3d 984 (5th Cir. 1997) ................................................................................................. 4

## Other Authorities

FED. R. EVID. 702 ........................................................................................................................ 4, 5

## I.     PRELIMINARY STATEMENT

Defendant Kyle Martin has filed a *Daubert* motion seeking to exclude portions of Plaintiff Jason Hinson's expert testimony.   *See* ECF No. 121, 121-7, Defendant's *Daubert* Motion ("Motion").   Defendant does not argue that Plaintiff's experts are not qualified to render their opinions, but instead takes many of Plaintiff's experts' statements out of context, argues that they are irrelevant or insufficient to support arguments Plaintiff does not make, and generally attacks these opinions on grounds immaterial to their admissibility.   Accordingly, and for the reasons set forth below, Defendant's Motion should be denied.

## II.     FACTUAL BACKGROUND

Plaintiff filed this lawsuit in 2017, alleging that Defendant and Sheriff Rodney Arbuckle violated his civil rights during an apprehension with a K-9, which left Plaintiff with severe nerve damage to his right arm.   ECF No. 1, Complaint.   After this Court denied Defendant qualified immunity, he sought review from the Fifth Circuit, which affirmed the Court's ruling in part and reversed in part.   ECF Nos. 38, 41, 42; *Hinson v. Martin*, 853 F. App'x 926 (5th Cir. 2021).   In particular, the Fifth Circuit analyzed the initial apprehension of Plaintiff—i.e., the first bite—and, based only on the limited evidence presented in Defendant's first motion for summary judgment, determined qualified immunity applied to that apprehension.   *Hinson v. Martin*, 853 F. App'x at 933.   However, the Fifth Circuit agreed with this Court that, taking Plaintiff's version of the facts as true, a jury could reasonably conclude that "ordering Rex to continue biting Hinson after he was subdued, and kicking him after he was handcuffed, constituted excessive force in violation of Hinson's Fourth Amendment rights." *Id.*

On remand, this Court affirmed that "Hinson still has three claims left for trial: (1) his Fourth Amendment excessive force claim relating to Martin's conduct after Hinson was subdued;

(2) his Louisiana law battery claim against Martin; and (3) his Louisiana law negligence claim against Martin." ECF No. 55, Order.

In support of his case, Plaintiff has designated two experts and has disclosed numerous treating physicians with personal knowledge of Plaintiff's injuries. Plaintiff's first designated expert, Mr. Ernest Burwell, provides several opinions on the generally accepted police K-9 practices and procedures that are relevant to Plaintiff's claims from the February 22, 2016 apprehension in this case. *See* Ex. 1, Expert Report of Ernest Burwell ("Burwell Rep."), at 4–18. For instance, he discusses the bite and hold method of K-9 training, including standard practices for issuing commands to canines. *Id.* at 4. He discusses proper practices for writing accurate and detailed bite reports, noting that the "purpose is for supervision to monitor misbehaving officers, civil rights violations, and assist with officer memory during trials." *Id.* at 5–6. He discusses past incidents involving Rex, the K-9 involved in this case, and provides the opinion that Rex and Defendant did not perform to the industry standard during those incidents in ways which were consistent with deficiencies he identified in the February 22, 2016, incident. *Id.* at 6–9.

After discussing his opinions at length, and citing to and thoroughly explaining the evidence and facts upon which his opinions are based, Mr. Burwell opined in part that "'Rex' bit Hinson for an extended period of time which did not comply with the standards established by the International Association of Chiefs of Police, numerous other Police and Sheriff's Departments throughout the country, generally accepted police K-9 practices, and Courts of Appeals and court decisions"; that Deputy Martin failed to write accurate and complete bite reports; and that he failed to give any K-9 announcements to Plaintiff before or after releasing Rex, as required under DeSoto Parish Sheriff's Office ("DPSO") policy. *Id.* at 17–18.

Plaintiff also designated Dr. Cameron Best as a medical expert.  Dr. Best reviewed Plaintiff's medical records from the time of his injury and performed an evaluation of Plaintiff in November 2022.  *See* Ex. 2, Expert Report of Dr. Cameron Best, at 3–5.  Based on his review and evaluation, Dr. Best opined that Plaintiff sustained a "severe crush injury with multiple bites to his right forearm," noting that it was "apparent that multiple bite marks were present, as the depressions and scarring within the forearm and scars at the wrist are consistent with more than one bite." *Id.* at 5.  He also opined that Plaintiff suffers from "significant paresthesias," "decreased flexion and strength," and pain, due to the multiple dog bite injuries he sustained.  *Id.* at 5–6.  He noted that Plaintiff would possibly benefit from exploratory surgery to release any scar tissue surrounding the nerve that was impacted, but that "[e]ven with surgery, it is likely that the decrease in strength would be permanent" and that he would "recommend a significant amount of physical and occupational therapy to help regain the most function possible."  *Id.* at 6.  Importantly, Defendant only challenges Dr. Best's testimony to the extent it refers to future treatment of Plaintiff's injuries.

Plaintiff also disclosed a number of treating physicians involved in Plaintiff's care following the dog bites he suffered during the apprehension on February 22, 2016.  For each, Plaintiff disclosed that the physicians would potentially be testifying to their "knowledge of Plaintiff Hinson's symptoms, diagnosis, and treatment following the incident as his treating physician, the scope, nature, and severity of Mr. Hinson's injuries following the incident, the condition of Mr. Hinson's arm and wrist before and after surgery, [their] experience treating patients with compartment syndrome, whether Mr. Hinson's injuries are consistent with multiple dog bites, and the extent of Mr. Hinson's long term symptoms and continuing care and treatment." *See* Ex. 3, Plaintiff's Expert Disclosures, at 2–4.

### III.    LEGAL STANDARD

Federal Rule of Evidence 702 controls whether expert testimony is admissible to assist the fact finder to understand the evidence.  It requires experts to (a) have "specialized knowledge" that will assist the trier of fact; (b) provide testimony based on "sufficient facts or data"; (c) provide testimony that "is the product of reliable principles and methods"; and (d) reliably apply the reliable principles and methods to the facts.  *See* FED. R. EVID. 702.  The Supreme Court's decision in *Daubert* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)).  Both scientific and non-scientific expert testimony is subject to the *Daubert* framework, which requires trial courts to ensure that the testimony "is not only relevant, but reliable." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).

Reliability is determined by assessing the "methods, analysis, and principles relied upon in reaching the opinion," including evaluating whether the opinion comports with "applicable professional standards." *See Watkins v. Telsmith, Inc*., 121 F.3d 984, 991 (5th Cir. 1997).  For an expert opinion to be reliable, an expert must furnish some objective independent validation of the methodology used to reach his conclusions. *Tajonera v. Black Elk Energy Offshore Operations*, *LLC*, No. 13-0366, 2016 WL 1178669, at *8 (E.D. La. Mar. 28, 2016); *Brown v. Ill. Cent. R.R. Co.*, 705 F.3d 531, 536 (5th Cir. 2013).  However, the test of reliability is a flexible one, and the trial court has "discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see also Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000) ("Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under [Rule] 702.").

If the trial court determines that the expert's theory is reliable, the trial court must then determine whether the proposed testimony is relevant.  To be relevant, the proposed testimony must not only satisfy the standard of Rule 702, it must also be relevant "in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003).  "'There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.'"  *Vogler v. Blackmore*, 352 F.3d 150, 155 n.5 (5th Cir. 2003) (quoting FED. R. EVID. 702 advisory committee's note).

## IV.   ARGUMENT

Defendant's Motion seeks to exclude opinions given by Plaintiff's experts on nine bases. Plaintiffs do not seek to offer Mr. Burwell as a dog bite recognition expert, mooting one of these nine challenges.[1]

As to the remaining eight challenges, Defendant does not argue that Plaintiff's experts lack the requisite qualifications to opine on any of those stated opinions.  Instead, as explained further below, many of Defendant's arguments are attempts to narrow—not fully exclude—the scope of Plaintiff's experts' opinions, and many of Defendant's arguments go to the weight, not the admissibility, of Plaintiff's experts' opinions.  Finally, many of Defendant's arguments fail

---

[1] Mr. Burwell was asked by Defendant's counsel in his deposition about prior times he had been qualified as an expert, and he stated he had previously testified as a dog bite recognition expert. *See* Ex. 4, Deposition Transcript of Ernest Burwell (Dec. 15, 2022), at 58:24–60:10.  Although Plaintiff does not intend to proffer opinions on this topic from Mr. Burwell, should Defendant affirmatively raise this issue at trial, as he did in Mr. Burwell's deposition, Mr. Burwell is more than qualified to respond, given his twenty-year career as a K-9 handler and experience with dog bites, Ex. 1, Burwell Rep. at 3, 14, and should be allowed to do so.

because they are based on incorrect assumptions about the purpose for which Plaintiff offers the opinions.  Defendant's misapprehensions about the relevance or substance of Plaintiff's experts' opinions renders his arguments meritless.  Accordingly, the Motion should be denied in full.

      **A.**     **Mr. Burwell's Opinion Regarding a Canine Warning is Admissible and Relevant.**

As explained in detail in Plaintiff's Opposition to Defendant's Motion for Partial Summary Judgment For Canine Warning and State Law Claims, filed contemporaneously with this brief, Defendant's first argument is an attempt to relitigate the Fifth Circuit's decision and this Court's order on remand.  Defendant argues that any testimony by Mr. Burwell regarding Defendant's failure to warn Plaintiff before or after releasing the K-9 Rex should be excluded because "[p]ermitting Burwell to express the opinion that Martin should have given a warning when releasing Rex would violate the Fifth Circuit's holding in this matter."  Motion, at 5.  The Fifth Circuit opined that the initial apprehension—the first bite—was objectively reasonable, and thus qualified immunity applied.  *Hinson v. Martin*, 853 F. App'x at 932.  The Fifth Circuit's opinion does not mention Defendant's failure to warn or opine that it is irrelevant to Plaintiff's remaining Fourth Amendment claims.  *Id.* at 933.  Yet, Defendant relies solely on this opinion to seek exclusion of Mr. Burwell's failure to warn opinions on Plaintiff's Section 1983 claims and Plaintiff's state law tort claims because, according to Defendant, the state law claims "parallel[] the federal law standard under the Fourth Amendment."  Motion, at 6.

Defendant's argument fails for two reasons.  First, the Fifth Circuit did not rule that facts about the entire apprehension, particularly actions by the Defendant that may have violated established police practices and mitigated the use of force required, are not relevant to Plaintiff's remaining Fourth Amendment claim.  Indeed, such a question was not before the Court and would be inconsistent with the totality of circumstances approach articulated in *Graham v. Connor*.

*Graham v. Connor*, 490 U.S. 386, 396 (1989) ("[Determining the reasonableness of the force used] requires careful attention to the facts and circumstances of each particular case.").

Notably, both Parties' experts agree that assessing an excessive force claim requires inspection of all facts and circumstances.  Defendant's expert testified that the totality of the circumstances is relevant to determining whether appropriate force was used, *see* Ex. 5, Expert Report of Dr. Roy G. Taylor ("Taylor Rep."), at ¶ 15, and Plaintiff's expert further explained that whether a warning and opportunity to surrender were provided is relevant to whether the K-9 apprehension followed accepted practices, *see* Ex. 1, Burwell Rep. at 9, 24.  Defendant even testified that warnings are important to give fleeing suspects the opportunity to surrender before the application of force.  *See* Ex. 6, 30(b)(6) Deposition Transcript of Kyle Martin (Sept. 28, 2022), at 78:15–23.  Here, a jury may find that Deputy Martin's failure to warn before deploying Rex violated an established police practice, is consistent with Mr. Hinson's theory that Defendant showed disregard to him throughout the interaction, and deprived Plaintiff of the opportunity to surrender.

Second, Defendant is incorrect that Plaintiff's state law tort claims are coextensive with the federal law standard in excessive force cases.  Motion, at 6.  Plaintiff has Louisiana tort claims for battery and negligence that fully survived the Fifth Circuit's decision.  Evidence of Deputy Martin's failure to warn before deploying Rex is relevant to many of the elements of negligence and battery under Louisiana law.

Courts have held that negligence and excessive force claims are distinct and cannot be folded together.  *Kelly v. Stassi*, 587 F. Supp. 3d 409, 426 (M.D. La. Feb. 25, 2022) ("Defendants' argument that negligence and excessive force are subject to an 'overlapping standard' and should therefore be considered together is not persuasive.  Negligence is a distinct claim, and, while it

does entail analysis of objective reasonableness, it cannot be said to 'mirror' federal constitutional law."). Courts have also held that violations of policies, while not determinative of whether a duty of care was breached, are at least probative of what the standard of care is and whether it was breached. *Moore v. LaSalle Corr., Inc.*, No. 3:16-CV-01007, 2020 WL 6389183, at *4, 13 (W.D. La. Oct. 30, 2020). Similar to the analysis of excessive force negligence claims, a battery claim brought against a law enforcement officer requires a showing that the officer "acted with unreasonable or excessive force," which requires analysis of the same factors used to determine reasonableness for a negligence claim. *See Cobb v. Jones*, No. 14–0745, 2015 WL 5794027, at *6 (W.D. La. Oct. 2, 2015); *Kyle v. City of New Orleans*, 353 So.2d 969, 973 (La. 1977). Accordingly, Mr. Burwell's opinions that Deputy Martin's failure to warn Mr. Hinson before releasing Rex violated DPSO policy and did not comply with industry standards are admissible because they would help a jury determine whether Defendant breached his duty of care to Plaintiff during the apprehension, would help a jury evaluate the exigencies of the moment and whether Defendant had alternative methods of arrest, and would help a jury evaluate whether Deputy Martin acted carelessly and maliciously to Mr. Hinson throughout the interaction, resulting in the application of excessive force.

      **B.**    **Mr. Burwell Will Not Provide Legal Conclusions, But Opinions on the "Necessity" of Defendant's Actions are Permissible.**

Defendant seeks to exclude Mr. Burwell's opinions that Defendant's actions were "unreasonable" or "unnecessary," including opinions expressed by Mr. Burwell concerning the length of Defendant's use of force and the use of a police dog to bite a suspect after the suspect is attempting to surrender and otherwise poses no safety risk to the officer. *See* Motion, at 8–9. These opinions are admissible and should not be excluded. In support of his argument, Defendant presents snippets of Mr. Burwell's expert report out of context in order to attempt to divorce certain

phrases from the extensive analysis provided by Mr. Burwell that certain actions by Deputy Martin during the February 22, 2016, apprehension of Mr. Hinson failed to follow prevailing police standards, practices, and protocols.

The parties appear to agree that legal conclusions on the reasonableness or excessiveness of the force used by an officer are not properly the subject of expert testimony.  *See* ECF No. 120-1, at 22 (arguing that Dr. Taylor's legal conclusions should be excluded); *see also Cooper v. Brown*, 844 F.3d 517, 524 (5th Cir. 2016) (finding officer who allowed dog to bite compliant suspect for one to two minutes, while the suspect rolled onto his stomach and put his hands in view, to be unreasonable).  However, Defendant seeks to extend this principle too far, arguing that Mr. Burwell should not be able to offer expert opinions concerning the necessity or propriety of certain actions based on his extensive experience and understanding of police practices, standards, and protocols.  Opining on whether an officer's actions were appropriate or necessary in light of prevailing standards and practices is exactly what an expert is allowed to do in excessive use of force cases.  *See Joseph v. Doe*, No. 17-5051, 2021 WL 2313475, at *4 (E.D. La. June 7, 2021); *see also United States v. Mohr*, 318 F.3d 613, 623–25 (4th Cir. 2003) (finding expert testimony admissible where expert opined that there was "no reason" for officer to fail to give warning before releasing K-9 and that release of the dog was "inappropriate").

Mr. Burwell's opinions do not seek to provide legal conclusions and should not be excluded.  As one example of an allegedly impermissible conclusion cited by Defendant, Mr. Burwell offers opinions under the header "Rex Bit Hinson for an Unreasonable and Extended Amount of Time."  Ex. 1, Burwell Rep. at 9.  Mr. Burwell should be allowed to opine on the extended duration of the bites to Mr. Hinson.  As Mr. Burwell explains in this section, he arrived at the conclusion that the K-9 attack to Mr. Hinson exceeded a permissible duration based on his

more than 20-year experience as a K-9 handler, personal experience with over 425 K-9 bites, and thorough interviews with other police practitioners about the typical duration of K-9 bites during apprehensions.  *See id.* at 9–14.  This testimony meets *Daubert*'s reliability requirements and would assist the jury in understanding the significance of the duration of the bites to Mr. Hinson in this case.[2]

      **C.**    **Mr. Burwell's Opinions Regarding the Defendant's Violations of DPSO Policies are Admissible and Relevant.**

      Defendant argues that Mr. Burwell may not testify regarding Defendant's violations of DPSO policies.[3]  Mr. Burwell opines in part that "Deputy Martin failed to follow generally accepted practices for canine warnings, as well as the DeSoto Parish Sheriff's Office canine deployment policy regarding announcements."  Ex. 1, Burwell Rep. at 9.  Mr. Burwell's opinions on Defendant's various violations of DPSO policies are directly relevant to Plaintiff's case and are the type of opinion that many courts have allowed in excessive force cases involving K-9s.  *See, e.g.*, *Rivera v. Ring*, 810 F. App'x 859, 863 (11th Cir. 2020) (finding that expert's testimony in K-9 bite excessive force case "summariz[ing] Florida police practices of K-9 officers and conclud[ing] that Ring's actions adhered to those practices," did not invade the province of the jury and was directly relevant to excessive force claim); *Joseph*, 2021 WL 2313475 at *4 (allowing

---

[2] To the extent the Court finds that Mr. Burwell's opinions on the "necessity" of Defendant's actions constitute a legal conclusion, the content of his analysis, including his knowledge of police K-9 apprehensions, average duration of K-9 bites, and proper police procedures, should still be admissible.

[3] Defendant's Motion states that Mr. Burwell's opinions regarding "whether Lieutenant Martin complied with or violated the DeSoto Parish Sheriff's policies" are inadmissible, and cites as examples only references made by Mr. Burwell to DPSO policies on use of force and canines. *See* Motion, at 9–11.  Accordingly, Plaintiff understands this argument to be about opinions referencing DPSO policies specifically, not more widely applicable policies, such as policies from the IACP or the Department of Justice.  Regardless, Plaintiff's arguments in this section would apply equally to both types of policies.

K-9 expert to "opine on the standards or practices applicable to the incident involving Decedent, and whether or not certain standards or practices were met or violated by the conduct of the . . . police officers during the incident"); *Abdullahi v. City of Madison*, 423 F.3d 763, 772 (7th Cir. 2005) (plaintiff's proffered expert testimony that officer's tactics violated standard police practices was permissible because it could be relevant to the reasonableness inquiry); *Becker v. City of Evansville*, No. 3:12-cv-00182-TWP-MPB, 2016 WL 6395868, at *5 (S.D. Ind. Oct. 28, 2016) (noting that K-9 use of force expert's testimony was relevant because "[a] typical juror likely will not have experience or knowledge of the various options available to police for using force and how those options should be adapted to the circumstances and changing circumstances confronting police. Similarly, a typical juror likely will not have experience or knowledge of the standards for police practices when executing a warrant and effectuating an arrest.").[4]

Mr. Burwell's opinions are also relevant to Plaintiff's state law tort claims, and provide helpful information to a jury on what policies Defendant was required to follow and any violations that occurred.  Particularly, Mr. Burwell's opinion regarding the Defendant's failure to warn under the DPSO policy could assist a jury in understanding the standard of care that Defendant owed to Plaintiff under the circumstances.  Louisiana courts have noted that such policies, while "not determinative of fault and/or the applicable standard of care, . . . may be probative as to the controlling standard of care in this case."  *Moore*, 2020 WL 6389183 at *4, 13 (holding that jail's

---

[4] Defendant's argument that Mr. Burwell cannot opine on compliance with policies without providing a legal conclusion, *see* Motion, at 11–12, conflates Mr. Burwell's conclusions—there are numerous instances where Mr. Burwell provides opinions on Defendant's failure to comply with policies that do not touch on the reasonableness or excessiveness of such actions. *See, e.g.*, Ex. 1, Burwell Rep. at 17–18, ¶ 1 (noting that Rex's bite for an extended period of time did not comply with standards established by many police sources).  Allowing Mr. Burwell's testimony on police practices and procedures would not, as Defendant states, "permit Burwell to express a legal conclusion."  Motion, at 11.

guidelines were admissible in negligence action); *Schurman v. Panola-Harrison Elec. Coop., Inc.*, No. 03-1467, 2006 WL 8456468, at *1 (W.D. La. June 6, 2006); *Kelly*, 587 F. Supp. 3d at 427 ("Negligence is a distinct claim, and, while it does entail analysis of objective reasonableness, it cannot be said to 'mirror' federal constitutional law.").

Finally, Defendant's expert, Dr. Roy Taylor, bases his entire report on vague references to "nationally accepted law enforcement practices and Desoto Parish Sheriff's Office policies," *see* Ex. 5, Taylor Rep., ¶¶ 13, 20, 22, 24, opining based on those unsupported references that Defendant acted in compliance with such practices and policies.  Indeed, in instances where Dr. Taylor's testimony has been excluded in the past, it is in part because he failed to connect the policies he was describing to those in effect in the location of the dispute.  *See Vance v. Deloach*, No. 3:19-CV-999-BJD-MCR, 2022 WL 1555589, at *4 (M.D. Fla. Apr. 14, 2022) (excluding Dr. Taylor's testimony on police practices when he failed to connect the model policy on which he relied to policies relevant to the dispute at issue).  Should the Court accept Defendant's argument, it would apply equally to exclude the totality of Dr. Taylor's testimony.

### D.    Mr. Burwell's Description of Plaintiff's Injury is His Factual Basis for His Opinion, and is Admissible.

Defendant further argues that Mr. Burwell cannot opine on his understanding of the injury that Mr. Hinson suffered because he is providing a causation opinion.  To be clear, Mr. Burwell does not purport to be a causation expert and Plaintiff does not offer him for that purpose.  Instead, his statements regarding the injury that Mr. Hinson received were factual statements that formed the basis for his expert opinion that the K-9's extended bite did not comply with police practices and procedures.  *See* Ex. 1, Burwell Rep. at 17–18, ¶ 1; *see Hacker v. Cain*, No. 3:14-00063-JWD-EWD, 2016 WL 3681443, at *4 (M.D. La. July 6, 2016) (noting that an expert may state the factual

bases for his or her opinion, and a jury may "accept or reject the factual foundation of an expert's opinion").

Mr. Burwell's understanding of the level of injury to Mr. Hinson's arm, the duration of the attack, coupled with his experience in both receiving and witnessing injuries from K-9 bites, is relevant and useful information to a jury.  *See* Ex. 1, Burwell Rep. at 3–4, 9–14.  A jury could view the duration of the bite and the severity of the injury, as well as testimony that those are inconsistent with police practices and procedures, as evidence that the use of force was unreasonable.

E.     **Mr. Burwell's Opinions on Defendant's Behavior After Apprehension is Admissible and Relevant.**

Next, Defendant seeks to exclude Mr. Burwell's opinions about Defendant's behavior after Mr. Hinson was apprehended, arguing it is prejudicial and irrelevant because jurors are capable of watching a video and making determinations for themselves.  Motion, at 12–13.  Mr. Burwell testified in his report that: "Martin's voice inflection on Rex was used to praise Rex for good and bad behavior. However, Martin has it backwards. As an example, he uses soft tones when the dog is biting and harsh tones when praising the dog as demonstrated when Rex was biting him on March 2, 2016. When he was walking Rex back to the patrol vehicle after biting Hinson on February 22, 2016, he told Rex over and over 'good boy.' Martin's behavior seemed extremely bizarre after Rex bit Hinson. He seemed particularly excited at the severity of the bite and continued to praise Rex repeatedly." Ex. 1, Burwell Rep. at 5.  However, Mr. Burwell's opinion, as an expert on police practices and procedures—qualifications which Defendant does not appear to dispute—will assist jurors with understanding how Deputy Martin's behavior after the apprehension deviated from acceptable standards for K-9 handlers.  In particular, they will assist jurors in understanding how Deputy Martin's behavior deviated from how police officers are

13

taught to command and praise K-9s, and how an officer should comport himself after an intense chase and apprehension.

Indeed, Plaintiff's theory of the case is that Deputy Martin acted maliciously toward him throughout the interaction by having his K-9 bite Plaintiff repeatedly after he was subdued, by taunting him while Plaintiff was on the ground being bit, and by kicking him alongside other officers.  While jurors may be able to notice that Deputy Martin is excited in the video, they do not know whether Deputy Martin's reaction to Mr. Hinson's apprehension is normal for an intense interaction or inconsistent with police training and best practices.  Mr. Burwell's testimony helps the jurors understand what is standard police practice and what is not.

### F.    Mr. Burwell's Opinions on Defendant's Inadequate Reports are Relevant.

Defendant also seeks to exclude Mr. Burwell's testimony on the inadequacy of Defendant's incident reports.  Mr. Burwell provided extensive information in his expert report regarding the generally accepted practices for filling out use of force reports, detailing the specific information expected in such reports. Ex. 1, Burwell Rep. at 5–6.  After detailing that information, Mr. Burwell concluded that the Defendant's "use of force reports leave out important details and do not correlate with the events that took place," and Defendant did not "write accurate and detailed bite reports." *Id.* at 17–18.  Defendant argues that such opinions should be excluded as irrelevant.

Certainly, Plaintiff is not planning to argue that Defendant committed a constitutional violation, or battery or negligence, in failing to properly fill out police reports.  However, the incident report in this case will undoubtedly be used by Defendant to buttress his testimony on what happened in the woods, and jurors should be allowed to hear testimony from an expert on police policies and procedures on how that incident report fails to comply with DPSO policies, and fails to meet generally accepted police standards, practices, and protocols for documenting use of force incidents.  Such testimony is directly relevant to the weight to be given to the incident

report prepared by Defendant in this case, and a lay juror would not otherwise know whether the incident was properly documented.  *United States v. Caldwell*, 586 F.3d 338, 348 (5th Cir. 2009) (holding that whether opinion testimony rests on scientific, technical, or other specialized knowledge turns on "whether the testimony falls within the realm of knowledge of the average lay person").  None of this testimony would be unfairly prejudicial or irrelevant to Plaintiff's case.

    **G.**    **Dr. Best's Opinions About Plaintiff's Likely Future Medical Needs are Admissible and Relevant.**

Next, Defendant seeks to exclude some of the opinions of Dr. Cameron Best, Plaintiff's medical expert.  Notably, Defendant does not argue that Dr. Best is not qualified to provide the opinions within his report.  Instead, Defendant argues that Dr. Best's opinions about medical procedures and treatments that may aid Plaintiff in the future are mere "possibilities" and therefore should be excluded because they cannot support a claim for future medical expenses.  Motion, at 14–15.[5]  But Defendant misunderstands the purpose of Dr. Best's testimony.  Plaintiff does not offer Dr. Best to support a claim for future medical expenses.  Instead, Dr. Best's testimony is admissible to support Plaintiff's claims under 42 U.S.C. § 1988 and Louisiana state law for damages due to ongoing pain and suffering.  The fact that Mr. Hinson currently experiences pain and loss of function, and that Dr. Best opines that he will continue to do so in the future even with further treatment, is directly relevant to Plaintiff's damages.  Courts routinely hold that such testimony is reliable and properly the subject of testimony for a physician who has directly

---

[5] Though Dr. Best used hedging language in his report, given that he recommended an "exploratory surgery" which, by definition, would be needed to *explore* Plaintiff's injury before Dr. Best could determine what benefit it could provide to Plaintiff, it should be noted that Dr. Best was unequivocal in his deposition that such a surgery could benefit Plaintiff.  *See* Ex. 7, Deposition Transcript of Dr. Cameron Best (Jan. 5, 2023), at 63:21–64:2 ("Q Okay. So your opinion is that it's possible that he would benefit from that surgery?  A For sure.  Q And your opinion is that it's possible that such a surgery could help decrease the paresthesias of the fingers. Is that right?  A Absolutely.").

evaluated a party's medical condition, as Dr. Best did here. *Talbot v. Elec. Ins. Co.*, No. 17-299-SDD-EWD, 2018 WL 6274359, at *2 (M.D. La. Nov. 30, 2018) (noting that plaintiff could provide evidence of future general damages at trial by presenting testimony about the "possibility of ongoing 'behavioral and psychosocial sequelae of concussion'" and that "under Louisiana law, general damages for pain and suffering may be established in three ways: (i) the circumstances of the case, (ii) expert medical testimony, and (iii) the tort victim's testimony") (citing *Jones v. Capitol Enter., Inc.*, 2011-0956, p. 46–47 (La. App. 4 Cir. 5/9/12), 89 So.3d 474, 506).

### H. Opinions by Plaintiff's Former Treating Medical Providers are Admissible to the Extent They are Based on Those Providers' Treatment of Plaintiff and Knowledge of Plaintiff's Injuries.

Finally, Defendant argues that Plaintiff's former treating medical providers should be precluded from testifying about the extent of Plaintiff's long-term symptoms and continuing care and treatment.  There is no dispute that several of Plaintiff's former treating medical providers have not had continuing contact with Plaintiff since they treated him shortly after his injury, and therefore could not render opinions on any care he has received since then, or the state of his injuries years later.  Contrary to Defendant's impression, Plaintiff does not seek to offer these providers for those purposes.  However, these medical providers can provide testimony regarding the extent of the injury Plaintiff received, how in their experience those injuries heal, and what long-term effects should be expected.  Such testimony would be based on the providers' knowledge of Mr. Hinson's injury from their treatment of him and would be reliable and admissible. *See Talbot*, 2018 WL 6274359 at *2.

## V.      CONCLUSION

For all the reasons stated above, Plaintiff respectfully requests that the Court deny Defendant's *Daubert* Motion and allow the testimony of Mr. Ernest Burwell, Dr. Cameron Best, and Plaintiff's treating physicians.

Dated: February 10, 2023

Respectfully submitted,

/s/ *John C. Nickelson*
John C. Nickelson, #32214
Heidi Kemple Martin, #35861
Nickelson Law PLLC
7591 Fern Avenue, Suite 1403
Shreveport, LA 71105
Tel: 318 678 5787
john.nickelson@nickelsonlaw.com
heidi.martin@nickelsonlaw.com

/s/ *Amee Frodle*
Amee Frodle (Admitted pro hac vice)
Pratik Agarwal (Admitted pro hac vice)
Nicholas Pastan (Admitted pro hac vice)
Zora Franicevic (Admitted pro hac vice)
Paul Schmidt (Admitted pro hac vice)
Covington & Burling, LLP
850 10th St. NW
Washington, DC 20001
Tel: 202 662 6000
afrodle@cov.com
pagarwal@cov.com
npastan@cov.com
zfranicevic@cov.com
pschmidt@cov.com

E. Bridget Wheeler
Nora Ahmed (Admitted pro hac vice)
ACLU Foundation Of Louisiana
1340 Poydras St, Ste. 2160
New Orleans, LA 70112
Tel: 504 522 0628
bwheeler@laaclu.org
nahmed@laaclu.org