**MINUTES [3:20]**
**May 12, 2023**

**ELIZABETH E. FOOTE**
**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| JASON HINSON #522009 | CIVIL ACTION NO. 17-260 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| RODNEY ARBUCKLE, ET AL. | MAG. JUDGE KAYLA D. MCCLUSKY |

On May 12, 2023, the Court convened a pretrial conference in the above-captioned matter. Nicholas Pastan (lead trial counsel), John Nickelson, Amee Frodle, and Pratik Agarwal participated on behalf of Plaintiff. Ashby Davis (lead trial counsel), Ashleigh Adams, and David Hemken participated on behalf of Defendant. Chloe Moreno is the law clerk in this matter, and any further questions about the minutes should be directed at her.

The Court first discussed the effect of the Fifth Circuit's opinion on the case. The Fifth Circuit's ruling left three remaining claims for trial: an excessive force claim under 42 U.S.C. § 1983, a Louisiana state law battery claim, and a Louisiana state law negligence claim. *See Hinson v. Martin*, 853 Fed. App'x 926, 933 (5th Cir. 2021). The Fifth Circuit clarified that the scope of those claims includes only those actions taken against Hinson after he was "subdued." *Id.* at 931. As to Defendant's invocation of qualified immunity, the Fifth Circuit held that Hinson "prevail[ed] on the second prong of the qualified immunity test" because "[t]he law was [] clearly established before February 2016 that, generally speaking, 'once a suspect has been handcuffed and subdued, and is no longer resisting, an officer's subsequent use of force is excessive.'" *Id.* at 933 (citations omitted). Defendant's counsel argued that the Fifth Circuit found that Hinson had only prevailed on the second prong of the qualified immunity analysis on a multiple bite theory of liability and had failed to

address Defendant's single bite theory. The Court disagreed, finding that as to both the multiple and single bite theories, the Fifth Circuit deemed the second prong of the qualified immunity analysis to have been proven. The Fifth Circuit also found that the nature and extent of Hinson's injuries exceeded the *di minimis* threshold. *Id.* at 932. The remaining issues for trial can be narrowed down to a question of whether the force employed by Martin was reasonable, and further, which party's narrative of what transpired on February 22, 2016, is more credible.

Plaintiff's counsel clarified the extent of Hinson's alleged injuries and scope of damages for which he seeks redress. Hinson seeks damages for pain and suffering, disability, and emotional distress. Hinson alleges that the excessive force employed by Martin has resulted in long-term and permanent damage to his arm, the loss of use of his hand, and nerve damage.

The Court addressed the admissibility of evidence, generally. There are two ways to admit evidence: evidence that may only be admitted through a witness's testimony and evidence that can be admitted on its own because its relevance is obvious, and the document is short so not to overburden or overwhelm the jury. Any evidentiary rulings made during the pretrial conference may be reurged during trial. The Court addressed the three motions *in limine*, the motion to seal, and the objections raised in the pretrial order.

## I.    Defendant's First Motion *in Limine* [Record Document 142]

In his motion *in limine*, Defendant requested that the Court deny Plaintiff's "untimely attempt to amend his complaint" to raise an "additional" negligence claim. Record Document 142-4 at 1. Defendant interprets Plaintiff's election to elicit testimony of the decision to transport Hinson to DeSoto Regional Hospital to be an attempt to raise a "new theory of negligence." *Id.* In his opposition, Plaintiff claimed that he seeks to introduce this evidence to demonstrate the extent of Hinson's pain and suffering. The Court **DENIED** Defendant's motion *in limine* [Record Document

142], finding that any evidence and testimony about Martin's decision to transport Hinson to DeSoto Regional Hospital is relevant to Hinson's pain and suffering claims and does not serve as an independent theory of negligence liability.

## II.    Defendant's Second Motion *in Limine* [Record Document 143]

Defendant's second motion *in limine* raised twelve separate issues.[1] For the reasons articulated below, the Court **GRANTED IN PART** and **DENIED IN PART** Defendant's motion *in limine* [Record Document 142].

### a.    Martin's Failure to Provide a Canine Warning Violated DPSO Policy

Defendant sought to exclude evidence of or reference to Martin's failure to provide a canine warning before deploying Rex—a violation of DeSoto Parish Sheriff's Office ("DPSO") policy—because he argued that the Fifth Circuit found that Martin's decision to do so was objectively reasonable. Record Document 143-1 at 2. In his opposition, Plaintiff argued that the failure to provide a canine warning "is probative of Defendant's intentional and malicious conduct, making it more likely that Defendant ordered K-9 Rex to continue biting Plaintiff, or allowed him to chew and tear on Plaintiff's right arm as punishment for attempting to flee." Record Document 159 at 2. The Court **GRANTED IN PART** and **DENIED IN PART** Defendant's motion. The Court agreed that the Fifth Circuit's ruling precluded Plaintiff from pursing independent claims of liability regarding Martin's failure to provide a canine warning. However, the Court also found that Martin's failure to provide a canine warning is relevant to the overall narrative of what transpired on February 22, 2016. The Court further held that Plaintiff's counsel are not allowed to examine a witness about the provision of a canine warning (or lack thereof) in similar situations unless Defendant pursues that

---

[1] It is important to note that some of these motions *in limine* overlapped with the parties' objections to exhibits to be offered into evidence at trial.

line of questioning first. In that case, Plaintiff must approach the bench before eliciting any testimony on the canine warning. The Court also **ORDERED** the parties to instruct their experts that, per the Fifth Circuit's holding, Martin's violation of DPSO Canine Policy is not an independent basis for liability.

      b. <u>DPSO's Canine Unit Policy</u>

Defendant also sought to exclude portions of DPSO's Canine Unit Policy. Record Document 143-1 at 5. Those portions were Sections V(E)-(H), VI, VIII, IX, and XIV under the heading "98.053 CANINE UNIT." *Id. See also* Record Document 147-27. Defendant argued that these sections are irrelevant, prejudicial, and impermissibly refer to the canine warning. Record Document 143-1 at 5-6. In his opposition, Plaintiff argued that redacting these sections would only serve to confuse the jury. The Court **DENIED** Defendant's motion, citing Federal Rule of Evidence 106. In other words, the Court allowed the entire policy to be entered into evidence for completeness. Defendant's counsel shall draft a jury instruction that explains that the failure to provide a canine warning is not relevant to the issue of Martin's liability.

      c. <u>DPSO's In-Car Video Policy</u>

Defendant sought to exclude evidence and testimony regarding DPSO's In-Car Video Policy because it is irrelevant, the violation of a policy does not rise to the level of a constitutional violation, and the policy is irrelevant to the issue of excessive force. Record Document 143-1 at 6-7. In his opposition, Plaintiff argued that he only intended to use the policy for impeachment purposes. Record Document 159 at 6. During the pretrial conference, Plaintiff's counsel clarified that the policy is relevant because only one of the four other deputies recorded the incident on his dash camera, which is in direct violation of DPSO policy and is not reflective of standard practice. The Court **DENIED IN PART** and **GRANTED IN PART** Defendant's motion *in limine*, finding that

evidence and testimony related to the DPSO In-Car Video Policy may be used for impeachment purposes only.

     d.   <u>Related Incidents Involving Rex</u>

Defendant sought to exclude evidence of other incidents involving Rex because those incidents are irrelevant, prejudicial, and impermissible character evidence. Record Document 141-3 at 8-9. In his opposition, Plaintiff averred that he did not seek to admit evidence of the other incidents as negative character evidence, but to demonstrate Martin's knowledge of DPSO policies, canine handling, and police procedure. Record Document 159 at 7. Plaintiff claims that these reports also prove that Hinson's is the only apprehension in which the other deputies failed to write a corroborating report. The Court found that these incident reports do not pose a Federal Rule of Evidence 404(b) issue. The Court **DENIED IN PART** Defendant's motion. The Court distinguished the ten incidents into two categories: those that occurred before February 22, 2016, and those that occurred afterward. First, the Court held that evidence and testimony related to incidents that occurred before February 22, 2016—Rex's apprehension of Delano Owens and Rex's accidental biting of Deputy Kelby Pearah—are relevant and admissible to show Martin's knowledge of police procedure and handling of police canines. The Court **DEFERRED** ruling on the admissibility of evidence or testimony regarding Rex's accidental bite of Martin. Defendant's counsel provided some additional context on that incident. According to Defendant's counsel, Martin was serving a criminal warrant in a building. While serving the warrant, the pair came across a pile of clothes outside of a door which confused Rex and caused him to bite Martin. The Court held that evidence and testimony pertaining to seven other apprehensions by Rex that occurred after February 22, 2016—the apprehensions of Isaac Charleston, Armando Martinez, Norman Farris, Kristopher Finklea, Matthew

Hinkle, Delkedric Richardson, and Kayla Murphy—are admissible as evidence of Martin's knowledge of canine handling and police procedure.

### e. Martin's Written Reports

Defendant sought to exclude "evidence, allegations, and argument" about the adequacy and accuracy of Martin's written reports as referenced in Plaintiff's expert Ernest Burwell's report. Record Document 143-1 at 17. The Court **DEFERRED** ruling on this issue until the *Daubert* hearing.

### f. Transcript from Martin's Dash Camera Video

Defendant sought to exclude the transcript from Martin's dash camera video because of its accuracy. Record Document 143-1 at 18. Specifically, Defendant contends that there are "deficiencies" in the audio, including periods of inaudible conversation, a lack of time stamps, and the lack of speaker identification. *Id.* Defendant further argues that the transcript is hearsay. In his opposition, Hinson argued that the transcript is a certified copy of the dash camera video made by "an independent, professional transcriber, who swore to its accuracy and completeness," Record Document 159 at 13. The Court **DENIED** Defendant's motion *in limine* on the dash camera transcript. The Court will provide the Fifth Circuit's pattern jury instruction 2.14, which provides guidance on how to instruct the jury about typewritten transcripts. Defendant is **ORDERED** to provide the Court with specific objections to the authenticity of the transcript by **5:00 p.m. on May 23, 2023**.

### g. Use of the Term "Victim"

Defendant sought to exclude any "references to other suspects apprehended by Rex as victims (as well as Hinson himself up and through his apprehension)." Record Document 143-1 at

18-19. The Court **DENIED** Defendant's motion. The Court noted that it would be willing to issue a jury instruction that an attorney's words and arguments are not themselves evidence.

      h.   Hinson's Expert Reports and Expert Curricula Vitae

      In his motion *in limine*, Defendant requested the Court preclude Plaintiff from introducing his experts' reports and curricula vitae into evidence. Record Document 143-1 at 20. Defendant argued that the documents constitute inadmissible hearsay. *Id.* The Court agreed that expert reports are hearsay and **GRANTED** Defendant's motion on that issue. The Court further noted that it would allow all experts' curricula vitae into evidence if the parties stipulated to their admission because the Court could envision that it might be important for the jury to be able to review the experts' credentials. Defendant's counsel indicated that he would "think about it." The Court asked the parties to summarize the issues raised in their *Daubert* motions. Defendant's counsel articulated that one opinion which Defendant seeks to exclude is Dr. Best's opinion about possible medical treatments that Hinson might benefit from. *See* Record Document 121-7 at 14. During the pretrial conference, Defendant's counsel argued that Dr. Best failed to meet the requisite standard for medical expert testimony. Plaintiff's counsel argued that Dr. Best's opinion is relevant to Hinson's pain and suffering. The Court **DENIED** Defendant's *Daubert* motion as it relates to Dr. Best's opinion on medical possibilities.

      i.   IACP Model Policies, Concepts and Issues Papers, and Training Updates

      Defendant sought to exclude various publications by the International Association of Chiefs of Police ("IACP"), including two model policies, two concepts and issues papers, and two training updates. Record Document 143-1 at 20. Defendant argued that these documents are prejudicial. *Id.* at 21. He further argued that admitting this information into evidence would "usurp the judge's role

in determining the applicable law." *Id.* Plaintiff's counsel explained that Mr. Burwell, Hinson's expert, relied upon these documents in drafting his expert report.

The Court **DEFERRED** ruling on the IACP model policies. The Court **DENIED** Defendant's motion *in limine* with respect to the two concepts and issues papers and the two training updates. The Court found that, pursuant to Federal Rule of Evidence 803(18), statements from the documents may be read into evidence, but the documents themselves may not be received as an exhibit. Specifically, the Court found the documents to be learned treatises and ruled that they may be admitted if introduced in connection with an expert's testimony.

j. Rex's "Early" Retirement

In his motion *in limine*, Defendant sought to exclude "evidence, allegations, and argument regarding Rex's purported early retirement." Record Document 143-1 at 24. During the pretrial conference, Plaintiff's counsel indicated that they do not seek to elicit testimony or offer evidence in support of their "early retirement" theory. Consequently, Defendant's motion *in limine* on this issue was **WITHDRAWN**.

k. Purchase Invoice for Rex

Defendant sought to exclude any evidence or testimony regarding Rex's purchase invoice. Record Document 143-1 at 24. Defendant argued that Hinson intended to offer the purchase invoice into evidence to support his theory that Rex was retired because he is a "bad dog," which Defendant contends is factually inaccurate. *Id.* Defendant contends "[t]his invoice should be excluded because it is irrelevant and because its probative value, if any, is substantially outweighed by the risk of unfair prejudice, confusion of the issues, misleading the jury, undue delay, and wasting time." *Id.* In his opposition, Plaintiff argued that the purchase invoice provides important information about Rex, including information about his breed, the date he was purchased by DPSO, and his training and

abilities. Record Document 159 at 18. During the pretrial conference, Plaintiff's counsel realized that the document that they filed into the record was incomplete and lacked important information about the languages in which Rex was trained. The Court **DEFERRED** ruling on this issue until the *Daubert* hearing on May 25, 2023. The Court **ORDERED** Plaintiff to email the Court the complete document by **5:00 p.m. on May 17, 2023**.

       1.   Hinson's Medical Records

      Defendant sought to exclude Hinson's medical records because he believed that the records were irrelevant, too voluminous, and would constitute a "document dump" on the jury. Record Document 143-1 at 23. In his opposition, Plaintiff contended that the documents could be reduced to eighty-five pages and were relevant because they "contain relevant admitting information, diagnoses, narratives, daily encounter notes, and discharge notes for Plaintiff's week-long hospital stay." Record Document 159 at 19. During the pretrial conference, the Court articulated its concern regarding the voluminous nature of the medical records and shared its rule that no pages are allowed to go before the jury that have not first been shown in open Court. Plaintiff's counsel shared that they had already deposed one of the two witnesses with whom they intended to introduce the medical records, but that they would reduce the medical records to eighty-five pages. The Court **DEFERRED** ruling on this issue. The Court **ORDERED** Plaintiff's counsel to provide the Court with the condensed eighty-five page document by **May 17, 2023, at 5:00 p.m**.

**III.    Plaintiff's Omnibus Motion *in Limine* [Record Document 144]**

      Plaintiff raised fourteen issues in his motion *in limine*.[2] For the reasons articulated below, the Court **GRANTED IN PART** and **DENIED IN PART** Plaintiff's motion *in limine* [Record Document 144].

---

[2] *See supra,* note 1.

a. Discussion of the Fifth Circuit's Ruling

The Court addressed this issue when it discussed the effect that the Fifth Circuit's ruling had on the issues to be decided at trial. *See supra* p. 1. Plaintiff's motion is **GRANTED IN PART** and **DENIED IN PART**.

b. The Application of Qualified and Statutory Immunity

The Court previously discussed qualified immunity. The Court also ruled on the scope of Defendant's statutory—or discretionary—immunity defense. The Court believes that discretionary immunity should be coextensive with the Fifth Circuit's ruling on qualified immunity. The Court **ORDERED** Plaintiff's counsel to file a brief on the burden of proof regarding discretionary immunity by **5:00 p.m. on May 26, 2023**.

c. State Law Cap for Plaintiff's Damages

Plaintiff requested that the Court provide clarity regarding Defendant's claim that a statutory cap is applicable to all of Plaintiff's claims. Record Document 144-1 at 6. In his opposition, Defendant clarified that the statutory cap would only apply to damages arising out of violations of Louisiana state law. Record Document 158 at 25. The Court **GRANTED IN PART** and **DENIED IN PART** Plaintiff's motion, holding that the state cap was only permissible for damages related to Hinson's state law claims. Furthermore, the Court clarified that the cap on damages is not relevant information for the jury because the Court would apply the statutory cap in the event that the jury determined Hinson was entitled to damages arising out of his state law claims.

d. Duty to Mitigate Damages

Plaintiff sought to exclude testimony that Plaintiff failed to mitigate his damages because he argues that "there is no duty to mitigate an injury before it arises," and the line of questioning is irrelevant. Record Document 144-1 at 7. In his opposition, Defendant argued that "Hinson had a

duty under La. Code Crim. P. Art. 220 to submit peaceably to Martin's lawful attempt to arrest Hinson," and Hinson's failure to do so left him partially responsible for what occurred. Record Document 158 at 23-24. The Court disagreed and **GRANTED** Plaintiff's motion.

e. Martin's Incident Report

Plaintiff sought to exclude the admission of Martin's incident report because he argued that it was hearsay and not a trustworthy narrative of events. Record Document 144-1 at 8. Defendant argued that he intends to offer the incident report for non-hearsay purposes; for example, the report is demonstrative of Martin's mental state at the time. Record Document 158 at 13. He further contends that the credibility of Martin's incident report is a determination to be made by the jury. *Id.* at 12. The Court **DENIED** Plaintiff's motion, finding that this is a public record pursuant to Federal Rule of Evidence 803(8)(b). The Court agreed with Defendant and held that an unreliable document goes to the lack of trustworthiness of the declarant. The Court noted the report's discussion of Hinson's arrest in 2007 and **DEFERRED** ruling on whether that portion of the report is admissible.

f. Plaintiff's Criminal History

Plaintiff sought to exclude evidence or testimony on Plaintiff's criminal history, including a 2008-armed robbery conviction, the underlying documentation related to Hinson's 2016-armed robbery charge, and charges and convictions that occurred after Hinson's apprehension in 2016. Record Document 144-1 at 11-14. Plaintiff argues that Hinson's criminal history is prejudicial and irrelevant to Hinson's excessive force claim. *Id.* Defendant argues that these convictions are necessary to impeach Hinson's credibility. Record Document 158 at 8. Defendant further argues that the 2008- and 2016-armed robbery charges are directly relevant to the excessive force analysis. *Id.* at 1. The Court **DEFERRED** ruling on Hinson's criminal history before and after his apprehension.

The Court highlighted two issues about the admissibility of this evidence and testimony: first, whether the evidence and testimony of Hinson's criminal history should be admissible at all, and second, whether the criminal history may be used to impeach Hinson's testimony. The Court noted the importance of balancing considerations pursuant to Federal Rule of Evidence 403. The Court also commented that the 2008 conviction is more prejudicial than the other charges and convictions. The Court **DENIED** Plaintiff's motion as to any evidence related to the February 22, 2016, apprehension, including the arrest warrant.

g.  Plaintiff's Prison Communications

Plaintiff sought to preclude testimony or evidence regarding Martin's prison communications because they are irrelevant and highly prejudicial. Record Document 144-1 at 16. In his opposition, Defendant contended that the content discussed in those communications may be the basis for impeaching Hinson about any contributing factors to Hinson's loss of enjoyment of life and mental distress. Record Document 158 at 14. The Court **GRANTED** Hinson's motion on this issue. The Court **SUSTAINED** Plaintiff's objection to Exhibit E "Prison Communications" [Record Document 146-5], and held that the actual communications may not be admitted. If Defendant wishes to use this evidence to impeach Hinson, Defendant's counsel must first approach the bench.

h.  Plaintiff's Employment History

Plaintiff sought to exclude evidence and testimony related to Plaintiff's employment history, including any references to Hinson's alleged difficulty maintaining or acquiring employment. Record Document 144-1 at 17-18. Plaintiff argues that this information is not relevant to Plaintiff's claim and would be highly prejudicial. *Id.* Defendant contended that the records demonstrate the existence of other contributing factors to Hinson's loss of enjoyment of life and mental distress. Record Document 158 at 16. Specifically, Defendant argued that Hinson's injuries were not too

severe to prevent Hinson from seeking employment. *Id.* at 16-17. The Court **GRANTED** Plaintiff's motion and clarified that it will allow the Defendant to ask Hinson questions about the extent of his disability, which includes questions regarding Hinson's physical capabilities. Defendant can also ask Hinson if he has ever been fired from a job for having a physical disability. However, Defendant cannot elicit testimony or discuss Hinson's employment history. The Court **SUSTAINED** Plaintiff's objection to Exhibit F "Foster Farms Records" [Record Document 146-6], which was comprised of his employment records from Foster Farms and indicated that he was discharged from his role. The Court **OVERRULED** Plaintiff's objection to Exhibit G "East Carroll Parish Detention Records" [Record Document 146-7], which show what kinds of jobs Hinson listed as being able to work.

     i.   <u>Plaintiff's Medical Expenses</u>

Plaintiff sought to preclude the testimony, argument, or evidence about Martin's ability to pay his medical bills. Record Document 144-1 at 19. Plaintiff argued that this evidence is irrelevant because Plaintiff is not pursuing damages for any past or present medical expenses. *Id.* At the pretrial conference, Defendant's counsel agreed and assured the Court that it would not pursue this line of questioning. The Court **GRANTED** Plaintiff's motion *in limine*.

     j.   <u>Plaintiff's Ability to Support His Family</u>

Plaintiff sought to preclude the testimony or evidence regarding Martin's ability to financially support his family. Record Document 144-1 at 19. Defendant argued that the information is relevant to demonstrate other contributing factors to Hinson's loss of enjoyment of life and mental distress. Record Document 158 at 19. The Court **GRANTED IN PART** and **DENIED IN PART** Plaintiff's motion. Specifically, the Court held that Defendant can only use this evidence to impeach Hinson if Hinson testifies that his financial situation is causing him distress. Defendant must approach the bench before pursuing this line of questioning.

k.  <u>Third-Party Criminal Convictions</u>

Plaintiff sought to exclude evidence relating to the criminal convictions of those individuals apprehended by Rex: Delano Owens, Isaac Charleston, Norman Farris, Kristopher Finklea, Matthew Hinkle, Delkedric Richardson, and Kayla Murphy. Record Document 144-1 at 20. Plaintiff argued that those criminal convictions are irrelevant under Federal Rule of Evidence 401 and offer no probative value to the current case. *Id.* In his opposition, Defendant argued that the criminal convictions are relevant to provide the jury "the full story regarding these dog bites." Record Document 158 at 22. The Court **GRANTED** Plaintiff's motion, finding that the criminal convictions were not relevant.

l.  <u>An Unrelated 2021 Lawsuit Brought by Plaintiff</u>

Plaintiff sought to preclude the introduction of evidence or argument related to a 2021 lawsuit brought by Hinson against East Carroll Parish. Record Document 144-1 at 21. Plaintiff argues that the evidence is irrelevant to the claims before the Court and prejudicial because the underlying filings contain references to Hinson's criminal history. *Id.* at 22. At the pretrial conference, Defendant's counsel explained that Hinson had filed a lawsuit against East Carroll Parish after his eye was injured while being transported by the Sheriff's Department. The Court **GRANTED IN PART** and **DENIED IN PART** Plaintiff's motion. Specifically, the Court held that Defendant may only use this evidence to impeach Hinson if Hinson denies a 2021 injury to his eye. Defendant must approach the bench before impeaching Hinson using this information.

m.  <u>Burwell's Wrongful Termination Lawsuit</u>

Plaintiff sought to exclude evidence relating to a wrongful termination lawsuit Burwell filed against the City of Los Angeles because the lawsuit is irrelevant to Burwell's qualifications to testify as an expert. Record Document 144-1 at 23-24. Plaintiff also argued that the underlying documents

in that lawsuit constitute hearsay. *Id.* at 24. Defendant argued that evidence of Burwell's termination, including the lawsuit, is relevant to his credibility and qualifications as an expert. Record Document 158 at 10. He further argued that "Martin should be permitted to cross-examine Burwell regarding the termination of Burwell's service with the LASD, and to impeach him if his testimony is inconsistent with his pleadings from his failed lawsuit asserting that he was wrongfully terminated." *Id.* at 11. The Court **GRANTED IN PART** and **DENIED IN PART** Plaintiff's motion. The Court found that Defendant may cross-examine Burwell about his termination, but the lawsuit and any underlying documents—including the complaint, the opposition to Defendant's motion for judgment, and the opinion from the California Court of Appeals—are inadmissible.[3]

  n.  Plaintiff's Tattoos

Plaintiff sought to preclude "evidence and argument related to Plaintiff's tattoos" because they are "completely irrelevant to the issues before the Court and before the jury." Record Document 144-1 at 25. Defendant contended that precluding any testimony or discussion of Hinson's tattoos would be prejudicial, and Defendant should be allowed to refer to the tattoos when discussing the location of Hinson's injuries. Record Document 158 at 21. The Court **GRANTED IN PART** and **DENIED IN PART** Plaintiff's motion *in limine*. The Court held that Defendant is allowed to discuss the tattoos if they are relevant to the location of the injury. However, Defendant is precluded from discussing the tattoos to the extent that he seeks to draw attention to, describe, or denigrate Plaintiff because of his tattoos.

---

[3] Plaintiff labeled the complaint, the opposition to defendant's motion for judgment, and the opinion from the California Court of Appeals as Exhibit K [Record Document 146-11], Exhibit L [Record Document 146-12], and Exhibit M [Record Document 146-13], respectively.

IV.    **Motion to Seal [Record Document 148]**

Defendant filed a motion to seal medical records related to the incidents where Rex bit Deputy Kelby Pearah and Martin. The Court asked Defendant's counsel for further clarification about which documents in the record he was seeking to seal. Those record documents were 148-2, 148-3, and 148-4. Plaintiff's counsel represented that Plaintiff did not oppose the sealing of those records. The Court indicated that it would grant Defendant's motion in a separate order.[4]

V.    **Objections in the Pretrial Order [Record Document 154]**

a.    Plaintiff's Objections to Defendant's Witness List

Plaintiff objected to Defendant calling a DPSO records custodian and raised concerns about the late disclosure of this witness.[5] Defendant indicated that the records custodian would no longer be called. As a result, Plaintiff's objection was **WITHDRAWN**.

b.    Defendant's Objections to Plaintiff's Exhibits

The Court ruled on and/or addressed the following exhibits while discussing Defendant's second motion *in limine*:[6]

- Exhibit 4 "DeSoto Regional Hospital Records" [Record Documents 147-3 and 147-4]: Defendant **WITHDREW** his objection to this exhibit. The Court will require Plaintiff's counsel to walk the jury through each page it seeks to put before the jury if they decide to introduce this document into evidence. This was discussed in Section II(l) of these minutes. The Court expressed concerns regarding the legibility of this document. Plaintiff's counsel indicated that they would attempt to sharpen the appearance of the document to assist with legibility.

- Exhibit 5 "Jason Hinson's DeSoto Parish EMS Patient Care Record" [Record Document 147-2]: Defendant **WITHDREW** his objection to this exhibit. The Court will require

---

[4] That order was signed on May 15, 2023, and is docketed as Record Document 160.

[5] Plaintiff does not argue that Defendant's disclosure of this witness is untimely, but rather, late in that it is very close to trial and the date that the pretrial order was due to be filed.

[6] There are inconsistencies in labeling between the motions *in limine* and the pretrial order. The parties represented that the labeling in the pretrial order is consistent with the labeling to be used at trial. As such, the Court will refer to exhibits as they are labeled in the pretrial order, which will oftentimes be different than how the exhibits were labeled in the motions *in limine*.

Plaintiff's counsel to walk the jury through each page it seeks to put before the jury if they decide to introduce this document into evidence. This was discussed in Section II(l) of these minutes.

- Exhibit 6 "Certified Transcript of Police Dash Cam Video from February 22, 2016" [Record Document 147-1]: The Court **OVERRULED** Defendant's objection. This was addressed in Section II(f) of these minutes.

- Exhibit 8 "Jason Hinson's University of Health Shreveport Records from February 22, 2016" [Record Documents 147-5, 147-6]: The Court **DEFERRED** ruling on this exhibit. The parties were also **ORDERED** to provide the Court with a smaller group of medical records, as discussed in Section II(l) by **5:00 p.m. on May 17, 2023**.

- Exhibit 12 "US-K9 Unlimited Invoice" [Record Document 147-7]: This was discussed in Section II(k) of these minutes. The Court **DEFERRED** ruling on this exhibit. Plaintiff's counsel explained that the exhibit that they filed was an incomplete version. The Court **ORDERED** Plaintiff to email the Court the full record by **5:00 p.m. on May 17, 2023**.

- Exhibit 13 "DPSO Incident Report by Kelby Pearah dated January 5, 2016" [Record Document 147-13]: The Court **OVERRULED** Defendant's objection. This was addressed in Section II(d) of these minutes.

- Exhibit 14 "Kyle Martin's Dash Cam Video Footage from March 2, 2016" [Record Document 147-16]: The Court **DEFERRED** ruling on this issue. This incident was addressed in Section II(d) of these minutes.

- Exhibits 15-22: These are the arrest and incident reports for Isaac Charleston, Armando Martinez, Norman Farris, Kristopher Finklea, Matthew Hinkle, Delkedric Richardson, and Kayla Murphy [Record Documents 147-18-147-26]. The Court **OVERRULED** Defendant's objections. These were addressed in Section II(d) of these minutes.

- Exhibit 23 "DPSO Use of Force and Canine Policy" [Record Document 147-27]: The Court **OVERRULED** Defendant's objection. This exhibit was addressed in Section II(b) of these minutes.

- Exhibit 24 "DPSO Dash Cam Video Policy" [Record Document 147-28]: The Court held that this exhibit may only be used for impeachment purposes. This exhibit was addressed in Section II(c) of these minutes.

- Exhibit 25 "IACP Model Policy on Law Enforcement Canines (2001)" [Record Document 147-29]: The Court addressed this exhibit in Section II(i) of these minutes. The Court **DEFERRED** ruling on this issue.

- Exhibit 26 "IACP Concepts and Issues Paper on Law Enforcement Canines (2001)" [Record Document 147-30]: The Court addressed this exhibit in Section II(i) of these minutes. The

Court **OVERRULED** Defendant's objection to the extent that it is allowed by Federal Rule of Evidence 803(18).

- Exhibit 27 "IACP Model Policy on Law Enforcement Canines (2015)" [Record Document 147-31]: The Court addressed this exhibit in Section II(i) of these minutes. The Court **DEFERRED** ruling on this issue.

- Exhibit 28 "IACP Concepts and Issues Paper on Law Enforcement Canines (2015) [Record Document 147-32]": The Court addressed this exhibit in Section II(i) of these minutes. The Court **OVERRULED** Defendant's objection to the extent that it is allowed by Federal Rule of Evidence 803(18).

- Exhibit 29 "IACP Training #559 Law Enforcement Canines Update: Part I" [Record Document 147-33]: The Court addressed this exhibit in Section II(i) of these minutes. The Court **OVERRULED** Defendant's objection to the extent that it is allowed by Federal Rule of Evidence 803(18).

- Exhibit 30 "IACP Training #560 Law Enforcement Canines Update: Part II" [Record Document 147-34]: The Court addressed this exhibit in Section II(i) of these minutes. The Court **OVERRULED** Defendant's objection to the extent that it is allowed by Federal Rule of Evidence 803(18).

   c.   Plaintiff's Objections to Defendant's Exhibits

      i.   *Exhibit 32*

Exhibit 32 is titled "Audio Recordings from February 22, 2016 Incident." Plaintiff objected to the admission of the audio recordings from Hinson's apprehension on February 22, 2016, because he argued that the recordings constitute inadmissible hearsay, are irrelevant to the issues before the Court, and are prejudicial. Record Document 154 at 26. Defendant contends that the recordings are not hearsay and are relevant because they provide evidence of the events leading up to and after Hinson's apprehension. *Id.* During the pretrial conference, Plaintiff's counsel indicated that they were not sent the recordings, and as a result, did not know what Defendant was seeking to admit. The Court **ORDERED** Defendant to provide those recordings to Plaintiff. The Court further **ORDERED** Plaintiff to review those audio recordings and inform the Court whether he will

continue in his objection of those recordings or withdraw his objection by **5:00 p.m. on May 24, 2023**.

### ii. *Exhibits 34 and 37*

Exhibit 34 is titled "University Health Certification Form and Records," and are medical records related to a 2017 ear infection. Exhibit 37 is titled "City of Faith Halfway House Records Certification, Offender Assessment Forms, and Medical Forms" and provides information about Hinson's health insurance and visits to medical providers while living at the City of Faith Halfway House. *Id.* at 27-28. Plaintiff argued that these records are irrelevant and prejudicial. *Id.* at 26-28. Defendant argued that these exhibits are relevant to Hinson's failure to mitigate his damages because he was able to receive treatment for other ailments while incarcerated and while living at the halfway house. *Id.* at 27. The Court **SUSTAINED** Plaintiff's objection. The Court will permit Defendant to question Hinson about his access to health insurance and medical facilities after he was released from prison.

### iii. *Exhibit 41*

Exhibit 41 is titled "Rex Veterinary Records from Pine Ridge veterinary Center, LLC – redacted." This exhibit is a veterinary record with all information redacted except a standard diagram of a canine's teeth. Plaintiff objected to the admission of this exhibit because he argued that the document is irrelevant and prejudicial. Record Document 154 at 30. Defendant argued that the diagram shows that a canine has multiple teeth, and that his experts will testify that a single dog bite may cause multiple puncture wounds. *Id.* The Court **SUSTAINED** Plaintiff's objection. The Court held that a general diagram of a dog's teeth may be used if it is relevant and introduced in connection with a witness. However, Defendant may not use the veterinary record or the diagram in those

records. Defendant must approach the bench before attempting to introduce these veterinary records for a different purpose or before using a diagram of a canine's teeth during an expert's testimony.

### iv. *Exhibit 43*

Exhibit 43 is titled "Drone Video from Isaac Charleston Incident." Plaintiff objected to the admission of this exhibit because he argued that the video is irrelevant and prejudicial. *Id.* at 31. In the pretrial order, Defendant agreed that the video is irrelevant, but that it should be admitted if the Court deems the incident reports created after Rex apprehended Charleston to be admissible. *Id.* at 32. During the pretrial conference, Plaintiff's counsel shared that the video itself does not show what transpired during Charleston's apprehension. The Court **OVERRULED** Plaintiff's objection and **ORDERED** Defendant to approach the bench before eliciting any testimony about this video or seeking to admit it. Plaintiff maintains the right to reurge his objection.

### v. *Exhibits 51 and 52*

Exhibit 51 is titled "Rex Veterinary Records from Pine Ridge Veterinary Center, LLC." Exhibit 52 is titled "Letter confirming Kyle Martin's promotion from Corporal to Lieutenant, effective January 6, 2020." At the pretrial conference, Defendant's counsel represented that Defendant will not move to admit these exhibits because Plaintiff will not be pursuing testimony regarding Rex's early retirement. Accordingly, Plaintiff's objections to these exhibits are moot.

### vi. *Exhibits that were Previously Ruled On*

The Court ruled upon and/or addressed the following exhibits while addressing Plaintiff's motion *in limine*.[7]

- Exhibit 31 "Certified copy of the February 2016 Warrant for the arrest of Jason Hinson for armed robbery" [Record Document 146-4]: The Court **OVERRULED** this objection, finding that the 2016 arrest warrant is relevant to the narrative of events. This was discussed in Section III(f) of these minutes.

---

[7] *See supra*, note 6.

- Exhibit 39 "East Carroll Parish Sheriff/Riverbend Detention Center Records Certification, Medical Transfer Summary, Intake Health Screening, Request Form, and Medical Transfer Form" [Record Document 146-7]: The Court **OVERRULED** Plaintiff's objection, which was discussed in Section III(h) of these minutes.

- Exhibit 40 "Foster Farms Records Certification and Personnel Action Form" [Record Document 146-6]: The Court **SUSTAINED** Plaintiff's objection, which was discussed in Section III(h) of these minutes.

- Exhibit 42 "Kyle Martin's Incident Report from February 22, 2016" [Record Document 146-1]: The Court **OVERRULED** Plaintiff's objection to the admission of this exhibit. However, the Court **DEFERRED** ruling on whether the portion of the report discussing Hinson's arrest in 2007 should be precluded. The Court discussed this exhibit in greater detail in Section(III)(e).

- Exhibits 44-50 [Record Document 146-8]: These are all certified copies of court minutes in criminal proceedings against six of the individuals that Rex apprehended. The Court **SUSTAINED** Plaintiff's objection to the admission of these exhibits. These exhibits were addressed in greater detail in Section III(k).

vii.  *Exhibits to be Used for Impeachment Purposes*

Defendant provided a list of exhibits he may use for impeachment purposes. Record Document 154 at 40-41. Plaintiff raised general objections to those impeachment exhibits. *See id.* at 41. The Court ruled on each exhibit individually. The Court **SUSTAINED** Plaintiff's objections to the following exhibits:[8]

- Hinson or Grigg's statements in written communications while Hinson has been housed at Natchitoches Parish Detention Center [DEF 2817-2839]

- Plaintiff Ernest Burwell's December 18, 2004, "Complaint for Damages" in *Burwell v. County of Los Angeles*, 2005 WL 5628220

- Plaintiff Ernest Burwell's August 24, 2005, "Plaintiff's Opposition to Defendants' Motion for Judgment on the Pleadings" in *Burwell v. County of Los Angeles*, 2005 WL 6201525

- *Burwell v. County of Los Angeles*, 2007 WL 1346175 (Cal. App. 2nd Dist., May 9, 2007)

---

[8] The Court will list these exhibits exactly as they were listed in the pretrial order.

The Court **DEFERRED** ruling on the following exhibits and instructed Defendant's counsel to approach the bench before using them to impeach a witness:[9]

- Hinson's Complaint [Doc. 1]

- Hinson's Notice of Compliance [Doc. 27]

- Hinson's Memorandum in Opposition to MSJ [Doc. 38]

- Hinson's Response to Statement of Uncontested Facts [Doc. 38-1]

- Hinson's May 13, 2018 Declaration under penalty of perjury [Doc. 38-2]

- Grigg's May 13, 2018 Declaration under penalty of perjury [Doc. 38-3]

- Hinson's Pre-Trial Statement [Doc. 47]

- Hinson's responses to written discovery in this matter or in Jason Hinson v. Sgt. Terrance Martin, et al., Case No. 23,316, Sixth Judicial District Court, East Carroll Parish, Louisiana [DEF 1245-1317]

- Hinson's September 23, 2021 deposition testimony in *Jason Hinson v. Sgt. Terrance Martin, et al.*, Case No. 23,316, Sixth Judicial District Court, East Carroll Parish, Louisiana [DEF 1245-1317]

## VI.    Logistics and Deadlines

The pretrial conference concluded with a discussion on trial deadlines and trial logistics. First, the Court reminded the parties that two copies of any edited video depositions to be introduced in lieu of live testimony must be delivered to chambers by **5:00 p.m. on May 26, 2023**. Any objections to those edited depositions must also be filed by **5:00 p.m. on May 26, 2023**. An additional copy of the edited video depositions must be delivered to the Court by the commencement of trial on **June 5, 2023**. Second, the parties must submit a glossary of all names and unusual terms to the court reporter by **5:00 p.m. on May 26, 2023**. Robin Enkey, the courtroom deputy, informed that parties that they must contact the court reporter as soon as possible if they are interested in real-

---

[9] *See supra*, note 8.

time transcription. The failure to make arrangements with the court reporter by May 22, 2023, may result in real-time transcription being unavailable. The parties may email Ms. Enkey at robin_enkey@lawd.uscourts.gov to receive the court reporter's contact information.

Second, the Court provided guidance for submitting the joint jury instructions. The Court will provide the jury with two sets of instructions: a preliminary set of instructions before opening statements are given and a set of jury instructions at the close of trial. Plaintiff's counsel must draft both sets of jury instructions. The jury instructions should inform the jury of what they are charged with determining, outline the relevant caselaw and elements of each issue before them, and provide information about the burden of proof. For example, the jury must receive an instruction pertaining to the elements of a Section 1983 claim which alleges the deprivation of a Fourth Amendment right. Because the parties have stipulated that the alleged excessive force occurred under color of state law and that Martin is a state actor, the jury instruction would include a restatement of the elements of a Section 1983 claim, information that the parties stipulated to elements two and three of the analysis, and a description of the first element. Defendant is tasked with drafting the jury instructions on the scope of time that is to be considered.[10] The parties will then exchange their draft instructions. If the parties can reach an agreement on those instructions, the parties must file them jointly. Should the parties fail to reach an agreement, Plaintiff and Defendant are each instructed to file his proposed jury instructions, from which the Court will create its own set of jury instructions. The parties are **ORDERED** to file both sets of jury instructions or individual proposals into CM/ECF by **5:00 p.m. on May 30, 2023**. The parties must also email the Court a courtesy copy of their joint or proposed

---

[10] The Court advised Defendant that its instructions should not include information about the Fifth Circuit's ruling that Martin's actions prior to when Hinson was subdued was objectively reasonable. A more appropriate jury instruction would be one that informs the jury that they are tasked with determining whether Martin's actions after Hinson was subdued constituted excessive force.

jury instructions in a Microsoft Word document. The parties may refer to the amended scheduling order for additional instructions [Record Document 82 at 7].

Third, the parties must file their stipulations by **May 30, 2023, at 12:00 p.m**. Counsel shall also deliver two paper copies of trial exhibits to chambers by **5:00 p.m. on May 31, 2023**. The exhibits shall be organized in binders no larger than three inches and organized using tabs that correspond to the exhibit numbers. The binders should also include a descriptive index. The parties are responsible for displaying their own exhibits. Counsel may contact Ms. Enkey to arrange a visit to the courtroom to familiarize themselves with the courtroom's technology. The parties must also prepare a binder of all exhibits that were admitted during trial which will be provided to the jury for deliberation at the conclusion of the case. The parties must also provide Ms. Enkey with a CD-ROM containing a copy of all exhibits offered and proffered into evidence within one week of the conclusion of trial to preserve the record for appellate review.

Fourth, Plaintiff's final will call witness list is due on **May 26, 2023, at 5:00 p.m.** Defendant's final will call witness list is due by **5:00 p.m. on May 31, 2023.** The parties are **ORDERED** to exchange their order of witnesses for the upcoming day of trial by **6:00 p.m.** the night before.

Fifth, the Court discussed voir dire. The Court picks a jury with simultaneous strikes. The parties are entitled to three peremptory challenges. *See* Fed. R. Civ. P. 47; 28 U.S.C. § 1870. Counsel shall refer to members of the jury by their respective numbers. Counsel may provide a list of questions that he or she would like the Court to ask on his or her party's behalf. Once the Court is finished asking the jury its questions, each side will have fifteen minutes for voir dire.

Sixth, the Court put the parties on a time clock to promote progress and efficiency. Plaintiff will have ten and a half hours to present his case-in-chief and any rebuttal. Defendant will have eight

and a half hours to present his case-in-chief. This time excludes opening and closing arguments and any objections argued at sidebar or outside of the presence of the jury. Ms. Enkey will keep time and can provide time updates as requested. The parties will have forty-five minutes for opening statements. The Court will determine how much time the parties are allotted for closing statements at a later date. The parties must raise any concerns about the adequacy of their time allotments at the *Daubert* hearing on **May 25, 2023**.

Finally, Plaintiff's counsel requested that the least restrictive restraints be used to secure Hinson, who is currently incarcerated at Natchitoches Parish Correctional Facility. The Court granted Plaintiff's request and stated that Hinson may be leg shackled to Plaintiff's desk and that the use of a leg curtain may be used. Additionally, the Court told Plaintiff's counsel that Hinson's restraints may be taped to prevent loud noise. Plaintiff's counsel is instructed to remind the Court that Hinson should be seated before the jury comes into the room so that they do not hear or see the shackles. Hinson is also permitted to wear civilian clothing.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE